# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas
Fort Smith Division

**FILED**
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Apr 7, 2021
OFFICE OF THE CLERK

In the Matter of the Search of            )
*(Briefly describe the property to be searched*   )
*or identify the person by name and address)*    )   Case No. 2:21cm27
**Black iPhone, IMEI: 352889113425193**   )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location)*: **Black iPhone, IMEI: 352889113425193mmore particularly described on Attachment A,**

located in the Western District of Arkansas, there is now concealed *(identify the person or describe the property to be seized)*: **See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

√  evidence of a crime;

☐  contraband, fruits of crime, or other items illegally possessed;

☐  property designed for use, intended for use, or used in committing a crime;

☐  a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Conspiracy to possess with intent to distribute A Schedule II controlled substance |

The application is based on these facts:

√  Continued on the attached sheet.

☐  Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

ANDREW CHRONISTER   Digitally signed by ANDREW CHRONISTER
                    Date: 2021.04.07 14:03:40 -05'00'
_____
*Applicant's signature*

Andrew Chronister, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/07/2021

_____
*Judge's signature*

City and state: Fort Smith, Arkansas

Mark E. Ford, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Andrew D. Chronister, Special Agent of the Drug Enforcement Administration (DEA), being duly sworn, depose and state that:

## INTRODUCTION

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I have been a Special Agent with the Drug Enforcement Administration (DEA), and have been employed in this capacity since April 2018. I am currently assigned as a Special Agent to the Fort Smith Post of Duty Office in Fort Smith, Arkansas. Before being employed with the DEA, I was employed by the Kansas City, Kansas Police Department from December 2012, to April of 2018.

3. During my employment with the DEA and Kansas City, Kansas Police Department, I have had formal training and experience in the investigation of controlled substances and I am familiar with the manner in which controlled substances, including marijuana, cocaine, methamphetamine, and other controlled substances, are packaged, distributed, consumed and how they are identified. I have participated in executing numerous arrests and search warrants for violations involving such substances. In the course of my employment, I have become familiar with the ordinary meaning of controlled substances slang and jargon, and I am familiar with the manners and techniques of traffickers who distribute controlled substances. I have also received training from experienced DEA Special Agents and other narcotics officers in the investigation of major drug traffickers.

4. The statements contained in this Affidavit are based on investigative efforts of this Affiant, other law enforcement officials, and on my experience and background as a Special Agent with the DEA and as an Officer with the Kansas City, Kansas Police Department. This Affidavit is being submitted for the limited purpose to establish probable cause for a search warrant for the search of the cellular phone (see Attachment A; "Device") seized and maintained in the Western District of Arkansas, Fort Smith Division, as evidence following the seizure of the phone after a search warrant was executed by the Mid Iowa Drug Task Force on Kyla FORBES Hotel Room (3108 South Center St, Room 119 Marshalltown, IA) on March 13, 2021. For a more specific description of the cellular phone, please refer to Attachment A.

5. Based upon your Affiant's knowledge, training, and experience, your Affiant knows that drug traffickers commonly use cellular phones to communicate with their criminal associates. These cell phones contain evidence regarding the dates and times of calls to and from their criminal associates as well as stored information regarding the telephone numbers, names, alias names and saved text messages (both sent and received) to and from their criminal associates. Cellular phones contain video and photographs of criminal associates, illegal substances, locations and other evidence pertinent to this investigation.

**PROBABLE CAUSE**

6. On March 13, 2021, at approximately 9:00 a.m., Arkansas State Police Trooper Christopher Short conducted a traffic stop on a white Hyundai Accent (Minnesota tag EAE170) for making an unsafe lane change in front of a pickup truck, causing it to have to apply its breaks, and following too closely to tractor trailer. The traffic stop occurred on westbound Interstate 40 near the 13 mile marker in Crawford County, Arkansas. The driver was later identified as Kyla FORBES (W/F 06/19/1974) and front seat passenger Malcolm ALEXANDER (B/M 09/18/1974).

ASP Trooper Short is a trained interdiction Trooper. Trooper Short noticed that both parties were extremely nervous. Trooper Short asked for consent to search the vehicle and FORBES denied consent. Trooper Short then requested for Trooper Jose Elmore and his K9 partner. While waiting, FORBES admitted to being on federal probation and that she was not supposed to leave the state (Iowa). FORBES also admitted to having a meth pipe in her purse.

7. At approximately 9:20 a.m., Trooper Elmore arrived on scene. Trooper Elmore utilized his K9 partner Bo to conduct a sniff of the air around the vehicle. Bo alerted to the presence of narcotics being in the vehicle. During a search of the vehicle, 10 bundles of methamphetamine weighing a total of 6.3 kilograms were located inside a black duffle bag that was placed in the trunk. Also located inside the vehicle was a glass pipe used to smoke meth in FORBES' purse and an open syringe in the center console.

8. At approximately 10:50 a.m., SA Andrew Chronister and TFO Eric Pippin conducted an audio recorded post Miranda interview of Kyla FORBES. During this post Miranda interview FORBES admitted to driving ALEXANDER to Greenville, Mississippi, on March 12, 2021. Once they arrived in Greenville, FORBES advised they drove to a hotel. FORBES stated that ALEXANDER gave her the money for the hotel room and she rented the room in her name at Executive Inn Motel (233 US-82, Greenville, MS 38701). ALEXANDER left FORBES at the hotel and retuned a few hours later. At which time FORBES and ALEXANDER left Greenville in route to the Des Moines, Iowa area. FORBES advised that she was getting paid $1000 by ALEXANDER to drive him to Greenville, Mississippi, and back. FORBES also stated that she knew ALEXANDER was a "drug dealer" as he had sold her Methamphetamine in the past and would also sell cocaine and Ecstasy.

9. FORBES continued to say that she had been living in a hotel room for the last 4 weeks at the Economy Inn (3108 South Center Street Marshalltown, IA 50158) in room 119. FORBES stated that in her room was approximately 5 grams of methamphetamine and drug paraphernalia. FORBES advised that the methamphetamine and drug paraphernalia in the room belonged to her.

10. After the statement provided by FORBES, Affiant contacted Federal Probation Officer, Benjamin Field. PO Field is the supervising officer of FORBES in the Southern District of Iowa. Affiant located PO Field through a standard NCIC check of FORBES. PO Field contacted the Mid Iowa Drug Task Force (MIDTF) who agreed to help with the investigation. MIDTF SGT James Gibson contacted the Affiant for the details surrounding FORBES' statements.

11. At approximately 5:45 p.m., SGT James Gibson of the Mid Iowa Drug Task Force appeared in front of Marshall County Magistrate Judge Barry Kaplan and was granted a search warrant for FORBES' hotel room.

12. At approximately 6:15 p.m., the warrant was executed and during the search of the room an iPhone (the device further described in attachment A), 8.4 grams of suspected methamphetamine, and a digital scale with suspected methamphetamine residue were located.

13. At the request of Affiant, on March 23, 2021, SGT Gibson mailed the device described in Attachment A to Affiant via UPS and affiant received it in the Western District of Arkansas, Fort Smith Division, on March 25, 2021, and placed it into the DEA's temporary evidence storage location at the Fort Smith DEA Post of Duty.

## TECHNICAL TERMS

Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash

memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.      GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records of the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock.  ETach satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.      PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing

documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

Based on my training, experience, I know that the device described in Attachment A has capabilities that allow it to serve as a wireless telephone, text messaging device, digital camera, portable media player, GPS navigation device, PDA, and has internet capabilities. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AN FORENSIC ANALYSIS

Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to

computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

Manner of execution. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

WHEREFORE, I believe that in light of the information contained herein, there is probable cause to believe that the Device (more particularly described in Attachment A; of this affidavit) seized by and in the possession of the Fort Smith Post of Duty DEA contains information and records which would constitute evidence of violations of 21 U.S.C. §§ 841(a)(1), 843(b), and 846, and that there is probable cause for a search warrant authorizing the examination of the Device described in Attachment A for the items described in Attachment B.

DATED this 7th day of April, 2021.

ANDREW CHRONISTER
Digitally signed by ANDREW CHRONISTER
Date: 2021.04.07 14:07:48 -05'00'

Andrew Chronister
DEA Special Agent

Affidavit subscribed and sworn to before me this  7th  day of April, 2021.

Honorable Mark E. Ford
United States Magistrate Judge

## ATTACHMENT A

Black iPhone, IMEI: 352889113425193, which is currently in the custody of the Fort Smith DEA located at 4977 Old Greenwood Rd, Fort Smith, AR 72903.




## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1), 843(b), and 846, including but not limited to:

    a.    Any and all communications to and from the Device involving the trafficking of controlled substances;

    b.    Any and all communications to and from the Device involving Malcolm ALEXANDER or any other party whom Forbes is communicating with regarding the distribution of controlled substances.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.